20826

The PEOPLES BANK OF SOUTH CAROLINA, INC., Respondent.
v. Chester L. ROBINSON and Beverly D. Robinson, Appellants.
(249 S. E. (2d) 784)

*Frederick K. Jones,* Florence, *for appellants.*

*Marvin P. Jackson, Jr.,* Florence, *for respondent.*

December 4, 1978.

RHODES, Justice:

This case involves a claim and delivery action, based on a promissory note and security agreement, commenced by

respondent (Bank) to recover from appellants (Robinsons) the possession of an automobile. The answer of the appellants asserted as a defense that respondent bank had discharged appellants' indebtedness and the lien on the automobile by delivering to them certain documents relieving them from liability on both the note and security agreement.

Both parties moved for summary judgments and the circuit court found in favor of respondent bank, concluding that the delivery of the documents purporting to cancel the indebtedness was ineffective as it was the result of a clerical error. From this order appellants have appealed. We affirm.

The facts, which are not in dispute, outline the following sequence of events. On March 23, 1976, the Robinsons purchased the automobile in question and obtained a loan from respondent in the amount of $2,802.72, payable in 24 monthly installments. As evidence of their indebtedness, appellants executed a note payable to respondent and also executed a security agreement granting a lien over the automobile. A record designating the bank as the first lienholder was entered on the certificate of title of the South Carolina Motor Vehicle Division.

In explanation of the clerical error asserted by the bank, a bank officer by way of affidavit stated:

That sometime during the month of March, 1977, . . . the Plaintiff [Respondent], its agents, servants any [sic] employees, unintentionally and inadvertently by mistake marked said note and security agreement "Paid and Satisfied" and released said lien upon the certificate of title to said motor vehicle and sent the said note and security agreement and certificate of title to said motor vehicle to the Defendants [Appellants], all of which . . . was done through inadvertent and unintentional error. . . . . .

The circumstances of the respondent's unintentional act are not contradicted by appellants. It is stipulated that the appellants paid on the indebtedness until July, 1977, at which time they ceased making monthly payments. Appellants fur-

ther admit that they have failed to pay the remaining indebtedness, upon which the present suit is predicated, and characterize the alleged discharge by respondent as gratuitous.

The only issue before us is whether the respondent's clerical error can be construed as a discharge of appellants' indebtedness on the automobile pursuant to § 36-3-605(1)(b). This section of the Uniform Commercial Code provides in pertinent part: "The holder of an instrument may even without consideration discharge any party . . . by renouncing his rights by a writing signed and delivered or by surrender of the instrument to the party to be discharged."

.. Appellants' position is that delivery of either the note or the notarized release of lien effected a "discharge" entitling them to summary judgment, and respondent's lack of possession of the aforementioned documents precluded it from summary judgment. Although the record reveals that the promissory note and security agreement were marked "Paid and Satisfied" and were returned to appellants with a notarized release of lien on their certificate of title, we cannot conclude that these unintentional actions constitute a discharge as envisioned by § 36-3-605(1)(b). Commentators on the Uniform Commercial Code conclude that the courts ". . . have glossed this section [36-3-605(1)(b)] by requiring that surender of the instrument be accompanied by an intent to discharge the party." J. White, R. Summers, *Uniform Commercial Code* at 447 (1972).

The above conclusory comment is supported by a number of cases. In *Bank of Austin v. Barnett,* 549 S. W. (2d) 428 (Tex. Civ. App. 1977), appellant bank effected various transactions with appellee in an attempt to renew and combine three separate notes with accompanying security agreement into one new note in the amount of the individual's total indebtedness. The action before the court involved the question of whether the bank's return of the original notes to the individual endorser would operate as a release of the total debt. In recognizing that the same result would obtain

under pre-code law, the court held that the evidence was insufficient to prove any intent on the part of the bank to release the original indebtedness or the collateral securing the debt. *Accord, Carraher v. Felix,* 534 P. (2d) 323 (Colo. Ct. App. 1975).

Federal Courts have likewise adopted the "gloss" of intent as a prerequisite of discharge under the code section in question. Under a factual situation similar to that in *Bank of Austin v. Barnett, supra,* the Fourth Circuit was squarely presented with the issue of whether the mere surrender of an instrument evidencing the original indebtedness would be sufficient in and of itself to constitute a discharge of the endorser's liability. In concluding that ". . . the intent of the parties was not to extinguish the original obligation . . .," the Court reasoned the following:

The record indicates that the old notes were returned to the judgment debtor as the new notes were issued, and the judgment-creditor urges that the giving up of the old notes by the garnishee-bank establishes the intent of the parties to have considered the original notes paid. This fact, however, in and of itself, does not necessarily rebut the inference that the original indebtedness has not been extinguished. *Hanley v. Bank of America National Trust & Savings Ass'n.,* 255 Cal. App. (2d) 439, 63 Cal. Rptr. 161 (1967); *Auch v. Andres,* 289 Mich. 206, 286 N. W. 214 (1939).

*Mid-Eastern Electronics, Inc. v. First National Bank of Southern Maryland,* 455 F. (2d) 141, 145 (4th Cir. 1970). *Accord, Slaughter v. Philadelphia National Bank,* 290 F. Supp. 234 (E.D.Pa. 1968).

The above interpretation is likewise in conformity with pre-code law as stated in 11 Am. Jur. (2d), Bills and Notes, § 906:

A cancellation made unintentionally, or under a mistake, or without the authority of the holder, is inoperative. Hence, an unintentional or mistaken cancellation of an instrument or a signature thereto effects no discharge thereof. Thus, it has

been held that where a note and a mortgage securing the same are held by a bank for collection, and the note, without the intent of the maker, owner, or purchaser of the same, is stamped "paid" through error by a teller at the time of delivering it in exchange for the amount due, such error does not have the legal effect of canceling the debt or discharging the instrument, and that the unauthorized act of the cashier of a bank in stamping a note "paid" upon receiving a renewal thereof does not of itself extinquish the original obligation. *Id.* at p. 951.

Concluding that § 36-3-605(1)(b) has not displaced the common law view allowing for mistake,[1] we accordingly hold that respondent's clerical error in and of itself will not constitute a discharge under § 36-3-605(1)(b).

There being no genuine issue as to any material fact in this case, the lower court correctly disposed of it in favor of the respondent as a matter of law.

Affirmed.

LEWIS, C. J., and LITLEJOHN and GREGORY, JJ., concur.

NESS, J., disqualified.

---

[1] Section 36-1-103 provides that the provisions of the Uniform Commercial Code be supplemented by common law principles of law and equity including the law relative to mistake, unless displaced by the particular provisions of the Act.