Gross, J.
As the successor in interest to the original mortgagee, appellant Wells Fargo, N.A. had possession of the underlying note at the time it filed a foreclosure action. On the back of the note was a special indorsement—“PAY TO THE ORDER OF FANNIE MAE WITH RECOURSE WORLD. SAVINGS BANK, FSB” with the signature of the “assistant custodian of records” of the original lender, World Savings Bank.[1] Over the indorsement was stamped the word “Cancelled.”
At a bench trial, it was established that appellee executed the note and mortgage in favor of World Savings Bank. Prior to the filing of the foreclosure action, World Savings Bank changed its name to Wacho-via and later merged with Wells Fargo. Wells Fax-go established appellee’s default and evidence of damages. '
The trial court granted appellee’s motion for involuntary dismissal for the bank’s failure to show that Fannie Mae had taken some action to transfer the note back to Wells Fargo. This was error, because Wells Fargo was entitled to cancel the special indorsement.
Possession of the original note is a significant event under the Uniform Commercial Code. For example, a “negotiation” requires “a transfer of possession, whether voluntary or involuntary, of an instrument by a person other than tjhe issuer to a person who thereby becomes the holder.” § 673.2011(1), Fla. Stat. (2014). Here, there are two realistic possibilities of what happened to the- note after the special indorsement was placed upon it. Under either possibility, Wells Fargo was entitled to cancel the indorsement.
First, the most likely scenario is that because it had possession of the original note, Wells Fargo reacquired the note from Fannie Mae, “by negotiation or otherwise.” § 673.2071, Florida Statutes (2014). As a former holder of the note, Wells Fargo was entitled to cancel in-dorsements made after it first became a holder of the note. This is the procedure authorized by section 673.2071: '
Reacquisition.—Reacquisition of an instrument occurs if it is transferred to a former holder, by negotiation or otherwise. A former holder who reacquires the instrument may cancel indorsements made after the reacquirer first became a holder of the instrument. If the cancellation causes the instrument to be payable to the reacquirer or to beai*er, the i-eac-quirer may negotiate the insti-ument. An indorser whose indorsement is canceled is discharged, and the discharge is effective against any subsequent holder.
*659 Id. As the Uniform Commercial Code Comment explains, the section 673.2071 procedure is an exception to the rule in section 673.2051(1) that the person identified in a special indorsement must indorse the note to allow a later transferee to acquire the status of a holder:
Reacquisition refers to cases in which a former holder reacquires the instrument either by negotiation from the present holder or by a transfer other than negotiation. If the reacquisition is by negotiation, the former holder' reacquires thé status of holder. Although Section 3-207 allows the holder to cancel all indorse-ments made after the holder first acquired holder status, cancellation is not necessary. Status of holder is not affected whether or not cancellation is made. But if the reacquisition is not the result of negotiation the former holder can obtain holder status only by striking the former holder’s indorsement and any subsequent indorsements. The latter case is an exception to the general rule that if an instrument is payable to an identified person, the indorsement of that person is necessary to allow a subsequent transferee to obtain the status of holder.
Uniform Commercial Code Comment to Section 673.2071 (italics supplied). The Comment explains that section 673.2071 implements “a rule of convenience” which relieves the reacquirer of “the burden of obtaining an indorsement, that serves no substantive purpose. The effect of cancellation of any,, indorsement under Section [673.2071] is to nullify it.”
A second potential scenario is that World Savings Bank never transferred the note and that the special indorsement was placed on the note by mistake. If the note was never transferred, it was not negotiate ed, and Fannie Mae never acquired the status of. a holder. See §§ 673.2011(1), 673.2031(1), Fla. Stat. (2014). Under this scenario, Wells Fargo was entitled to cancel the special indorsement. See Handley v. Horak, 82 Misc.2d 692, 370 N.Y.S.2d 313 (N.Y. Gen. Term 1975), “[I]f a holder can cancel an endorsement after delivery and reacquisition it can cancel an endorsement before delivery, whatever the reason for the cancellation.” Id. at 316; compare Los Alamos Credit Union v. Bowling, 108 N.M. 113, 767 P.2d 352, 352-53 (1989) (observing that “a cancellation, release, or surrender of [an] instrument is ineffective if it is unauthorized, unintentional, or done by mistake”).
The appellee in default demonstrated no prejudice from the lack of explanation from Fannie Mae. Because the original note was introduced in evidence, there was no likelihood that- Fannie Mae would later seek to enforce the same note.
We reverse the dismissal order entered in favor of the borrower and remand for further proceedings.
Ciklin, C.J., and Conner, J., concur.

. “With recourse” means that the indorser is liable to pay the amount due on the instrument pursuant to section 673,4151(1), Florida Statutes (2014), Section 673.4151(2) providés that if "an indorsement states that it is made ‘without recourse’ or otherwise disclaims liability of the indorser, the indorser is not liable under subsection [673.4151](1) to pay the instrument.” See also Fla. Coast Bank of Broward Cty. v. Monarch Dodge, Inc., 430 So.2d 607 (Fla. 4th DCA 1983) (discussing the application of section 673.414(1), Florida Statutes (1977)).